IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY RAY | : | CIVIL ACTION |
| | : | NO. 14-4959 |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security | : | |

O'NEILL, J.                                                                 July 26, 2016

**MEMORANDUM**

    Plaintiff Gregory Ray brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the adverse final decision of the Commissioner of the Social Security Administration denying his claims for supplemental security income under Title XVI of the Social Security Act. Presently before me are plaintiff's objections (Dkt. No. 13) to the Report and Recommendation of Magistrate Judge David R. Strawbridge affirming the decision of the Commissioner (Dkt. No. 12), defendant Commissioner's response (Dkt. No. 15), plaintiff's reply (Dkt. No. 16), the parties' opening briefs (Dkt. Nos. 8, 9, 11) and the administrative record (Dkt. No. 6). For the reasons that follow, I will overrule plaintiff's objections and affirm and adopt the Report and Recommendation.

**BACKGROUND[1]**

    Plaintiff was born on June 11, 1960. A.R. at 141. He last worked as a laborer in 2003. A.R. at 154, 175. Plaintiff protectively filed an application for benefits on September 16, 2011. A.R. at 141-150. He claimed that he was disabled due to knee and back conditions and bipolar disorder. See A.R. at 174.

---

[1]     Judge Strawbridge sets forth the background of this case in detail in his Report and Recommendation; I recite the factual background here only to the extent necessary to address plaintiff's objections.

At step one of the five-step disability evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since his application for benefits. A.R. at 21. At step two, the ALJ determined that plaintiff had several severe impairments: bilateral knee osteoarthritis, lumbosacral degenerative disc disease, affective disorder and anxiety disorder. A.R. at 21. The ALJ also found that the record showed that plaintiff was obese. A.R. at 21. However, because plaintiff had not alleged obesity as an impairment, the ALJ stated that she would account for any functional limitation stemming from his obesity in her later restriction of plaintiff to light work. A.R. at 21-22. At step three, the ALJ found that plaintiff did not have an impairment or a combination of impairments that meet or equal the severity of one of the statutorily listed impairments. A.R. at 22-23.

The ALJ then considered plaintiff's physical and mental limitations and found that he had the residual functional capacity (RFC) to perform light work with a set of limitations. A.R. at 24. At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work. A.R. at 32. Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform given his RFC, age, education and work experience. A.R. at 32-33. Thus, the ALJ concluded that plaintiff was not disabled as defined by the Social Security Act. A.R. at 33.

Plaintiff appealed the ALJ's decision to the Appeals Council; his request for review was denied. A.R. at 1-3. He then filed this action seeking review of the Commissioner's decision. See Dkt. No. 3. I referred this matter to Magistrate Judge Strawbridge, who recommended that the decision of the Commissioner be affirmed.[2] Dkt. No. 12 at ECF p. 1.

Plaintiff objects to the Report and Recommendation on four grounds. Plaintiff objects to

---

[2]     A district court judge may refer an appeal of a final decision of the Commissioner to a magistrate judge. See 28 U.S.C. § 636(b)(1).

the finding that the ALJ properly gave little weight to the opinion of his treating orthopedist and great weight to the opinion of the state reviewing physician.  Dkt. No. 13 at ECF p. 6-10. Plaintiff also objects to the finding that the ALJ properly gave little weight to his therapist's opinion and to the significance of his global assessment of functioning (GAF) scores.  Id. at ECF p. 1-6.  Finally, plaintiff objects to the finding that the ALJ properly considered his obesity in evaluating his RFC.  Id. at ECF p. 10-12.

## STANDARD OF REVIEW

I must review de novo any sections of the Report and Recommendation to which plaintiff has filed objections.  See 28 U.S.C. § 636(b)(1)(C); Brown v. Astrue, 649 F.3d 193, 195-96 (3d Cir. 2011).  On review, I may accept, reject or modify the Report and Recommendation, receive more evidence or return the matter to the magistrate judge with instructions.  See 28 U.S.C. § 636(b)(1)(C).

Final disability determinations of the Commissioner are reviewable when a plaintiff commences a civil action under 42 U.S.C. § 405(g).  My review of the Commissioner's final disability determination is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001). I am "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record . . . [but] exercise plenary review of all legal issues . . . ."  Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  "Thus, even if the ALJ's decision is supported by substantial evidence, the court can overturn that decision if it finds that it was based upon an incorrect legal standard." Lee v. Astrue, No. 06-5167, 2007 WL 1101281, at *1 (E.D. Pa. Apr. 12, 2007), citing Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).  "Substantial evidence has been defined as

'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

as adequate.'"  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001), citing Plummer v. Apfel,

186 F.3d 422, 427 (3d Cir. 1999).

**DISCUSSION**

I.      **Weight Given to Plaintiff's Treating Orthopedist**

Plaintiff objects to Judge Strawbridge's determination that the ALJ properly gave little

weight to the opinion of plaintiff's treating orthopedist, Dr. Ruth.  Dkt. No. 13 at ECF p. 6.  The

ALJ gave Dr. Ruth's medical source statement little weight because he "provided only routine

and conservative care."  A.R. at 30.  The ALJ concluded that the objective findings in Dr. Ruth's

treatment notes were "mild" and "not consistent with the limitations imposed."  A.R. at 30.  The

ALJ also found that Dr. Ruth's statement "represents an attempt by a treating source to help a

patient obtain benefits and does not reflect an independent assessment of the claimant's

maximum level of functioning."  A.R. at 30.  After reviewing the record in depth, the ALJ stated

that plaintiff's physical exams "were essentially normal other than some mild swelling and

tenderness."  A.R. at 25-28, 30.

Judge Strawbridge found that in the treatment notes the ALJ discussed, Dr. Ruth

continued to recommend and implement the same treatment plan for plaintiff for over five years,

indicating its effectiveness in managing his conditions.  Dkt. No. 12 at ECF p. 12; see A.R. at

292-344, 465-531.  Plaintiff also frequently reported that his treatment plan was providing relief.

See A.R. at 294-95, 297-98, 325, 465-66, 468-70, 479-80, 482-83.  Plaintiff testified at his

hearing with the ALJ that his pain was a five on a ten-point scale when he did not take pain

medication but that it went down to a two when he did take it, allowing him to walk up steps

"with ease" and "without having to take [his] cane with [him]."  A.R. at 55-56.

Plaintiff contends that his treatment regimen with Dr. Ruth demonstrates the consistency of his symptoms and the severity of his limitations rather than effective treatment.  Dkt. No. 13 at ECF p. 7.  He cites <u>Wilson v. Astrue</u> for support, a case in which an ALJ relied on numerous conclusory statements in finding the plaintiff not credible.  No. 07-0019, 2007 WL 4225507, at *8-9 (E.D. Pa. Nov. 28, 2007).  In <u>Wilson</u>, the ALJ ignored record evidence of plaintiff's impairments to reject the plaintiff's testimony regarding his pain.  <u>Id.</u>  The <u>Wilson</u> Court noted that plaintiff's decision not to pursue surgery "does not mean that the level or frequency of his treatment is inconsistent with his complaints of pain and other symptoms" such that it would undermine his credibility.  <u>Id.</u> at *9.  In this case, plaintiff has not challenged the ALJ's evaluation of his credibility; additionally, the ALJ's findings are supported by a lengthy discussion of the record and citations to the record.  <u>See</u> A.R. at 25-28, 30.

Plaintiff next argues that Dr. Ruth's opinion is entitled to deference because Dr. Ruth is his long-time treating physician.  Dkt. No. 13 at ECF p. 6; Dkt. No. 16 at ECF p. 3.  Plaintiff relies on a series of cases to support this position, but in all of them, ALJs improperly substituted their own judgment for those of medical professionals.  <u>See</u> <u>Morales v. Apfel</u>, 225 F.3d 310, 315, 318 (3d Cir. 2000) (concluding that an ALJ improperly rejected the opinion of a plaintiff's treating physician without any basis in the "objective medical evidence" but instead "simply because he did not believe [the plaintiff's] testimony at the hearing and because [other doctors] noted that [the plaintiff] appeared to be malingering in their examinations of him"); <u>Hawk v. Colvin</u>, No. 14-337, 2015 WL 1198087, at *11-12 (M.D. Pa. Mar. 16, 2015) (holding that an ALJ improperly rejected the opinion of a plaintiff's treating physician because she "did not rely on any medical opinion that supported her conclusion" and instead relied on an improper "independent interpretation of the medical records"); <u>Kovach v. Colvin</u>, No. 13-1626, 2014 WL

5

4796367, at *15 (M.D. Pa. Sept. 26, 2014) (finding that an ALJ erred when she "rejected all of the medical opinions in favor of her own" rather than choosing to rely on any of the medical opinions in the record and "did not cite to the record whatsoever"). That is not the case here because the ALJ chose to give great weight to some medical opinions and little weight to others, supported by citations to the record, in reaching her conclusion about plaintiff's RFC. See A.R. at 29-31.

Plaintiff also maintains that his treatment records from physical therapy and his primary care physician are consistent with Dr. Ruth's opinion and contradict the ALJ's determination. Dkt. No. 13 at ECF p. 7. The Commissioner responds that plaintiff's records support the ALJ's conclusions. See Dkt. No. 15 at ECF p. 7-8; see also Dkt. No. 12 at ECF p. 12-13.

The ALJ discussed and considered plaintiff's physical therapy records in coming to her conclusions. See A.R. at 27. In the physical therapy notes, plaintiff is described as progressing from an acute to subacute to intermediate subacute to "more intermediate" stage as his conditions "show[ed] some improvement" over the course of several months of treatment. A.R. at 450, 451, 453, 455. By his final appointment, his physical therapist observed that plaintiff had a "mild degree of hypertonicity . . . a medium level of tenderness, a mild degree of adhesions, and mild findings of swelling at the left knee" as well as a "mild degree of restricted joint function, and a clear indication of . . . improvement in the amount of stability of the left knee." [3] A.R. at 455.

---

[3]     The Commissioner argues that Dr. Ruth only observed mild swelling in plaintiff's knees, which supports the ALJ's conclusion and is consistent with plaintiff's other records. Dkt. No. 15 at ECF p. 7. Plaintiff challenges the Commissioner's characterization of Dr. Ruth's observations as "mild." See Dkt. No. 16 at ECF p. 4.

Dr. Ruth rarely described the nature or amount of the swelling he saw during his examinations, merely observing that plaintiff has "knee pain with swelling" or that his "knees are swollen." See A.R. at 292-342, 349-388, 465-527. In the one instance where Dr. Ruth provided a more detailed description of his observations, he called the swelling "mild." See A.R. at 307. Thus, although it cannot be said with certainty that Dr. Ruth saw mild swelling every time he

The physical therapy notes also stated that plaintiff had "a moderate loss of joint function" in his back. A.R. at 455. I agree with Judge Strawbridge that these findings are not inconsistent with the ALJ's assessment of plaintiff's conditions. See A.R. at 30; Dkt. No. 12 at ECF p. 12-13.

The ALJ also discussed plaintiff's primary care physician's notes at length. See A.R. at 25-28. Plaintiff's primary care physician's exams recorded consistent mild tenderness at both knees and intermittent lower back pain. See A.R. at 389, 392, 398, 401, 405, 411-12, 538, 543-44. However, as Judge Strawbridge observed, plaintiff's primary care physician continually noted normal movement of his extremities, normal muscle tone and strength, normal sensation and reflexes and a normal gait over the course of several years. See A.R. at 392, 397-98, 401, 537-38, 543-44. In a routine visit in 2012, plaintiff stated that "he feels well and has no acute complaints." A.R. at 542. Contrary to plaintiff's argument, these records from his primary care physician support the ALJ's decision to give little weight to Dr. Ruth's assessment of plaintiff's limitations.

Finally, plaintiff maintains that his use of a cane is inconsistent with the RFC that the ALJ assigned after giving Dr. Ruth's opinion little weight. See Dkt. No. 16 at ECF p. 4. The ALJ noted in her decision that it was "unclear why the claimant would require a cane" because there was "minimal objective evidence in this case such as x-rays and MRIs" and "no objective evidence that would justify a finding of radiculopathy." A.R. at 31. Dr. Ruth only specifically recommended that plaintiff use a cane on two occasions out of the dozens of visits plaintiff had with him; in contrast, he consistently recommended injections, home exercises and pain medication in his treatment plan. See A.R. at 292, 314.

Plaintiff contends that Social Security Ruling 96-9p supports his position. Dkt. No. 16 at

---

treated plaintiff, it is unclear what he did observe since his objective medical findings do not go beyond stating the presence of swelling.

ECF p. 4.  However, that Ruling states that use of a hand-held assistive device must be supported by "medical documentation establishing the need [for it] to aid in walking or standing, and describing the circumstances for which it is needed."  Social Security Ruling 96-9p, 1996 WL 374185 at *7.  As the ALJ observed, such medical documentation is lacking in plaintiff's case. See A.R. at 31.  Plaintiff also relies on one case where the ALJ improperly failed to address a plaintiff's use of a cane despite several doctors' discussion of it in the record and vocational expert testimony specific to the plaintiff's use of a cane.  See Altomare v. Barnhart, 394 F. Supp. 2d 678, 682 (E.D. Pa. 2005).   However, here the ALJ both addressed plaintiff's use of a cane and explained why the record does not support the limitations proposed by Dr. Ruth.  See A.R. at 31.  Therefore, I will overrule plaintiff's objection about the weight given to Dr. Ruth's opinion.

## II.     Weight Given to Non-Examining Physician

Plaintiff objects to the Report and Recommendation's finding that the ALJ properly gave "great weight" to the non-examining medical reviewer, Dr. Knott.  Dkt. No. 13 at ECF p. 9.  Dr. Knott provided his medical opinion in June 2012 after an assessment of the medical records by a non-physician single-decision maker in December 2011.  A.R. at 345-47.  The ALJ gave great weight to Dr. Knott's medical opinion because she found his opinion "balanced and objective" and found that "he has great familiarity with the SSA disability evaluation program."  A.R. at 29. The ALJ also pointed to evidence showing that plaintiff had "received routine and conservative care mostly consisting of knee injections and aspirations, medication and physical therapy" to treat his conditions.  A.R. at 29.  Finally, the ALJ explained that plaintiff's "condition ha[d] not substantially worsened since Dr. Knott completed his medical source statement in June 2012," citing evaluations in October 2012 and January 2013.  A.R. at 29.  Judge Strawbridge found that the ALJ's determination was supported by substantial evidence because Dr. Knott's findings

acted as a proper full adoption of the non-physician single-decision maker's assessment of plaintiff's conditions.  Dkt. No. 12 at ECF p. 14-15.

Plaintiff maintains that it was error for the ALJ to have given great weight to the opinion of a non-treating physician with a specialty outside of orthopedics over the opinion of plaintiff's treating orthopedist.  Dkt. No. 13 at ECF p. 10.  Plaintiff also challenges Dr. Knott's opinion because it does not address plaintiff's treatments after 2011.  Id.

For this objection, plaintiff cites a case in which an ALJ improperly adopted the opinion of the state non-examining physician rather than the plaintiff's treating physician and the consultative psychological examiner.  Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 357 (3d Cir. 2008).  In Brownawell, the Court of Appeals found that the ALJ disregarded the treating physician's opinion based "in large part on evidence that [did] not exist" and "mischaracterize[d] the evidence that [did] exist."  Id.  The Court of Appeals also noted multiple errors made by the non-examining physician.  Id.  Here, in contrast, the ALJ relied on specific evidence that existed in the record to support her decision to give great weight to Dr. Knott's opinion, referencing her previous discussion of the medical evidence in the record.  See A.R. at 29.

Plaintiff also relies on Gerard v. Colvin, where the ALJ gave "very substantial weight" to a non-examining physician even though the physician's opinion was inconsistent with the record as a whole.  No. 13-2029, 2014 WL 2095169, at *5 (D. Kan. May 20, 2014).  The Gerard Court remanded the plaintiff's case back to the ALJ after finding that the non-examining physician failed to address several of plaintiff's serious medical conditions or later medical records suggesting a new medical condition, an inconsistency which the ALJ failed to explain.  Id.  Here, the non-examining physician considered all of plaintiff's conditions in forming his opinion and, as the ALJ noted, plaintiff's conditions did not substantially change after Dr. Knott's evaluation

of the record in 2012.  See A.R. at 29.  Therefore, I will overrule plaintiff's objection about the weight given to Dr. Knott's opinion.

### III.   Assessment of Plaintiff's Non-Exertional Impairments

Plaintiff objects to Judge Strawbridge's conclusion that the ALJ appropriately assessed his non-exertional impairments, contesting the little weight given to his therapist's opinion and to his GAF scores.

#### A.   Weight Given to Plaintiff's Therapist

Plaintiff argues that the ALJ improperly gave little weight to his therapist's opinion of his non-exertional limitations.  Dkt. No. 13 at ECF p. 1.  The ALJ noted that even though a therapist is not an acceptable medical source, she still considered her statement.  A.R. at 30-31.  The ALJ found that the therapist's opinion was entitled to little weight because it was "inconsistent with treatment notes, which show that the claimant has generally improved with therapy and medications."  A.R. at 31.  The ALJ cited evidence that in January 2013, plaintiff "denied depression or anxiety" and that in March 2013, "he no longer hear[d] voices."  A.R. at 31.

Judge Strawbridge stated in his Report and Recommendation that "opinions from those not designated as 'acceptable medical sources' are never entitled to great weight," citing Social Security Ruling 06-03p, 2006 WL 2329939, at *2.[4]  Dkt. No. 12 at ECF p. 18.  Judge Strawbridge then listed the factors that ALJs must consider when reviewing a therapist's opinion, as laid out in 20 C.F.R. § 416.927(c).  Id.  Judge Strawbridge concluded that the ALJ's decision to give the therapist's opinion little weight was supported by substantial evidence because she cited numerous inconsistencies between the therapist's assessment of plaintiff's limitations and

---

[4]       Although Judge Strawbridge's citation to this Ruling identifies it as "96-03p" rather than "06-03p," the citation he provides is to Ruling 06-03p, which addresses how to consider opinions from non-acceptable medical sources.  See Dkt. No. 12 at ECF p. 18; Social Security Ruling 06-03p, 2006 WL 2329939, at *1.

the therapist's own notes or other treatment records.  Id.

Plaintiff argues that Judge Strawbridge erred in his statement that a therapist's opinion can never be entitled to great weight.  Dkt. No. 13 at ECF p. 2.  Indeed, the Social Security Ruling cited states that non-acceptable medical sources are not entitled to "controlling" weight; it does not state when "great" weight may be given to such a source.  See Social Security Ruling 06-03p, 2006 WL 2329939, at *2.

The Commissioner contends that this was likely a typographical error, as Judge Strawbridge was contrasting treating sources, whose opinions Judge Strawbridge stated may be entitled to controlling weight, with a source such as a therapist who would not be entitled to controlling weight under the appropriate Social Security Ruling.  See Dkt. No. 15 at ECF p. 3, citing Dkt. No. 12 at ECF p. 18.  I agree.  The intent of Judge Strawbridge's analysis is also clarified by his citation to the factors under 20 C.F.R. § 416.927(c), which the Ruling explains should be applied to non-acceptable sources in evaluating their opinions.  See Dkt. No. 12 at ECF p. 18; Social Security Ruling 06-03p, 2006 WL 2329939, at *2.

Next, plaintiff argues that the ALJ gave too much weight to the non-examining consultant while giving too little weight to plaintiff's treating therapist.  Dkt. No. 13 at ECF p. 3.  Plaintiff relies on one case to support his argument, a case where the Court found that an ALJ erred in giving great weight to the state examining psychologist over the plaintiff's treating therapist because the state examiner did not review any of the plaintiff's medical records in making his evaluation.  Figueroa v. Comm'r of Soc. Sec., No. 12-4932, 2013 WL 4517862, at *7 (D.N.J. Aug. 26, 2013).  Here, on the other hand, the state reviewer did examine plaintiff's records at the time of her evaluation; the ALJ concluded that the state reviewer's findings "reflect a thorough review of the record, are supportable and most consistent with the longitudinal review of the

evidence of the record." A.R. at 30. As the ALJ noted, plaintiff's condition has only improved since the time of the state reviewer's evaluation. See A.R. at 456, 462, 522, 556, 566.

Finally, plaintiff maintains that the ALJ should have relied on different evidence in the record to give greater weight to his therapist's opinion. Dkt. No. 13 at ECF p. 4. However, the ALJ cited to numerous pieces of evidence in the record that provide sufficient support for her conclusion that plaintiff's condition was more improved than plaintiff's therapist made it seem. See A.R. at 30. After plaintiff began attending therapy and taking medications for his mental health conditions, he described how his symptoms had steadily decreased — with some entirely eliminated — and how the techniques he learned in therapy were helping him think more positively about his life. A.R. at 456, 462, 552, 556, 566. I agree with Judge Strawbridge and find that the ALJ relied on substantial evidence in giving "little weight" to the opinion of plaintiff's therapist.

### B. Assessment of Plaintiff's GAF Scores

Plaintiff also maintains that the ALJ erred in her assessment of plaintiff's GAF scores. Dkt. No. 13 at ECF p. 4. The ALJ observed that plaintiff was assigned a GAF score of 57 in August 2011, "which indicates only moderate symptoms," and that his subsequent GAF scores were steadily reported at 50, "which indicates serious symptoms." A.R. at 31. However, the ALJ noted that plaintiff's GAF scores of 50 were only within one point of the "moderate" range and that a GAF score is "a non-objective, non-scientific measurement that is appropriate to clinical settings . . . [but] is not a measure of psychopathology (i.e., mental impairment)." A.R. at 31. The ALJ explained that she gave plaintiff's GAF scores little weight because his "treatment notes generally show a good response to therapy and medications" while his GAF scores "do not show a corresponding improvement" to his condition "as would be expected."

A.R. at 31.  The ALJ cited plaintiff's "ability to serve as the house manager" when he lived at a recovery house to "indicate[] that he is functioning at a higher level."  A.R. at 31.  Finally, the ALJ stated that plaintiff had not testified about hallucinations at his hearing, which is consistent with his treatment notes.  A.R. at 31-32.  Judge Strawbridge found this explanation adequate to support the ALJ's conclusion.  Dkt. No. 12 at ECF p. 19.

Plaintiff argues that his consistent GAF scores of 50 after September 2011 show that his condition did not improve in therapy over time.  Dkt. No. 13 at ECF p. 4.  Plaintiff also contends that Judge Strawbridge and the ALJ "failed to take into account the nature of [plaintiff's] service as a house manager," maintaining that it demonstrates how plaintiff cannot function independently and noting that it was a volunteer position, not a paying job.  Id. at ECF p. 5-6.

Although a GAF score is medical evidence that "must be addressed by an ALJ in making a determination regarding a claimant's disability," a GAF score does not have a "direct correlation to the severity requirements" under Social Security Administration rules.  Watson v. Astrue, No. 08-1858, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009).  Here, the ALJ evaluated plaintiff's GAF scores in the context of his greater medical record and explained why she discounted plaintiff's scores.  See A.R. at 31.  Further, although plaintiff's GAF scores did not increase, he showed other signs of improvement during his treatment, signs which the ALJ cited in her determination.  See A.R. at 31; see also Rios v. Comm'r of Soc. Sec., 444 F. App'x 532, 535 (3d Cir. 2011) (holding that a case did not warrant remand where an ALJ failed to discuss the plaintiff's two GAF scores of 50 in his treatment records because while he "was consistently sad and depressed, [he] displayed moderate progress towards reaching his treatment goals").  The ALJ did not characterize plaintiff's position as a house manager at his recovery house as a job, but instead as one of several indications "that he is functioning at a higher level" than what

his GAF scores might otherwise indicate about him.  See A.R. at 31.  Because substantial

evidence supports the ALJ's finding, I will overrule plaintiff's objection about the weight given

to his GAF scores.

**IV.     ALJ's Consideration of Obesity**

Finally, plaintiff contends that the Report and Recommendation errs in its conclusion that

the ALJ properly assessed the impact of plaintiff's obesity on his RFC.  See Dkt. No. 13 at ECF

p. 10-13.  The ALJ found plaintiff's obesity to be nonsevere because plaintiff did not claim it as

an impairment and the ALJ found that any functional limitations posed by plaintiff's obesity

were accounted for by a restriction to a range of light work.  See A.R. at 22.  Judge Strawbridge

found that the ALJ properly assessed plaintiff's obesity because the ALJ considered it despite

plaintiff's failure to allege obesity as an impairment, limited plaintiff to light work with specific

limitations and cited medical evidence in the record in her conclusion.  Dkt. No. 16 at ECF p. 16.

Judge Strawbridge also noted that plaintiff has made no showing that further consideration of his

obesity would affect the outcome of his case.  Id.

In his objection, plaintiff questions Judge Strawbridge's characterizations of how obesity

came up at plaintiff's hearing — only after a question by the ALJ — and also how much the ALJ

relied on certain doctors' assessments in coming to her conclusion.  Dkt. No. 13 at ECF p. 11.

Plaintiff argues that because the ALJ gave little weight to plaintiff's doctors' assessments of his

functional limitations, the ALJ could not have "adopted" those doctors' conclusions about

plaintiff's obesity.  See id.

Plaintiff contends that a case cited by Judge Strawbridge, Rutherford v. Barnhart, 399

F.3d 546 (3d Cir. 2005), supports his argument.  There, Court of Appeals held that an ALJ's

failure to consider obesity explicitly may not constitute a reason for remand where the ALJ

adopts the opinions of doctors who were aware of a plaintiff's obesity.  Rutherford, 399 F.3d at 553.  Here, however, the ALJ explicitly analyzed plaintiff's obesity at steps two through five of the sequential evaluation process.  A.R. at 22, 25-28, 31.  Thus, the ALJ did not have to indirectly factor obesity into her analysis by adopting plaintiff's treating physicians' functional limitations because she correctly considered obesity at each step.  Further, although the ALJ did not adopt plaintiff's doctors' functional limitations in their entirety, she explicitly accepted the doctors' assessments that plaintiff had Level I obesity, despite plaintiff's failure to raise it as an impairment himself.  See A.R. at 22.

Additionally, as Judge Strawbridge noted, plaintiff's failure to identify how additional consideration of his obesity alone would have impacted the outcome of his case prevents me from sustaining his objection.  See Dkt. No. 12 at ECF p. 17.  Rather, "the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for [her] findings regarding [the plaintiff's] limitations and impairments."  Rutherford, 399 F.3d at 553.  Plaintiff's "generalized response" speculating about how his obesity "can" or "may" impact other impairments in a previous round of briefing is "not enough to require a remand."  See id.  Thus, I will overrule plaintiff's objection that the ALJ improperly evaluated his obesity in formulating his RFC.

## CONCLUSION

For the reasons stated above, I will affirm and adopt the Report and Recommendation and overrule plaintiff's objections.  Thus, I decline to remand the case to the ALJ for further review and will instead enter judgment in favor of the Commissioner.

An appropriate Order follows.